IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

APPEAL NO: 19-14841

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL MENCHER,

Appellant

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:18-cr-00234-MSS-MAP

APPELLANT'S INITIAL BRIEF

Darlene Calzon Barror
Law Office of Darlene Calzon Barror, P.A.
506 N. Armenia Ave.
Tampa, FL 33609
(813) 877 6970
(813) 879 2610 (fax)
Pleadings@barrorlaw.com
CJA Counsel for Michael Mencher

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Cir. R. 26 - 1, I hereby certify that the persons listed below are interested in the outcome of this case:

Natalie Hirt Adams - Assistant U.S. Trial Attorney

Darlene Barror – appellant counsel for Michael Mencher

Anne Borghetti - trial counsel for Michael Mencher

Jeffery Geldert Brown - trial counsel for co-defendant Erick Robinson

Bjorn E. Brunvand - trial counsel for co-defendant Christopher Cusimano

D. Todd Doss -Assistant Federal Public Defender for co-defendant Cody J. Wesling

Sean P. Flynn, District Court Magistrate Judge

Carlton Gammons, Assistant U.S. Trial Attorney

Dan Hernandez - appointed trial counsel for co-defendant Allan Guinto

Maria Chapa Lopez - United States Attorney

Charles Lykes - Appointed Appellate Counsel for Michael Mencher

Michael Mencher - Appellant/Defendant below

Sara Lenore Mieczkowski - Assistant Public Defender for co-defendant Cody J. Wesling

Lori Palmieri - appointed trial counsel for Michael Mencher

Erick Robinson - co-defendant/witness for Government

Mary S. Scriven - District Court Judge

Ron Smith - appointed Appellate Counsel for Michael Mencher

Benjamin Stechshulte - appointed trial counsel for co-defendant Allan Guinto

Cody Wesling - co-defendant/witness for Government

J. Jervis Wise - appointed trial counsel for co-defendant Christopher Cusimano

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Michael Mencher respectfully requests oral argument on this appeal. Counsel believes oral argument is necessary and will be beneficial to the Court in its resolution of the issues.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons     2

Statement Regarding Oral Argument     3

Table of Contents     4

Table of Citations     6

Statement of Jurisdiction     8

Statement of Adoption     8

Statement of the Issues     8

Statement of the Case

      Course of Proceedings and Disposition in the Court Below     9

      Statement of Facts     15

Standards of Review     18

Summary of the Argument     18

Argument

      **THE GOVERNMENT FAILED TO PROVE ESSENTIAL ELEMENTS OF THE OFFENSES IN COUNTS ONE AND TWO**     19

      **THE DISTRICT COURT ERRED IN NOT DISMISSING OR GRANTING ACQUITTAL ON COUNT THREE AS FLORIDA'S PREMEDITATED MURDER DOES NOT QUALIFY AS A CRIME OF VIOLENCE UNDER 18 U.S.C. §924(C)**     23

# TABLE OF CONTENTS (Continued)

**Page**

**THE DISTRICT COURT ERRED IN DENYING MR. MENCHER'S MOTION FOR SEVERANCE FROM HIS CO-DEFENDANT**  26

**THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR MISTRIAL WHEN THE SEATED JUROR CONDUCTED HIS OWN RESEARCH INTO CASELAW RELEVANT TO THE TRIAL AND ADVISED THE OTHER JURORS ON WHAT THEY FOUND**  30

Conclusion  33

Certificate of Compliance with Rule 32(a)  34

Certificate of Service  35

# **TABLE OF CITATIONS**

**Cases**                                                                          **Page**

*Bruton v. U.S.,* 391 U.S. 123 (1968)                                              12,28

*Zafiro v. U.S.*, 506 U.S. 534 (1993)                                              12,28

*United States v. Descent*, 292 F.3d 703 (11th Cir. 2002)                          18

*United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009)                      18

*United States v. Browne*, 505 F.3d 1229 (11th Cir. 2007)                          18

*United States v. Batson,* 818 F.3d 651 (11th Cir. 2016)                           21

*United States v. Beasley*, 72 F.3d 1518 (11th Cir. 1996)                          22

*Rosemond v. United States*, 572 U.S. 65 (2014)                                    23

*In re Fleur*, 824 F.3d 1337 (11th Cir. 2016)                                      24

*United States v. Davis*, 139 S.Ct. 2319 (2019)                                    24

*Brown v. United States*, 942 F.3d 1069 (11th Cir. 2019)                           24

*Curtis Johnson v. United States*, 559 U.S. 133, 137 (2010)                        24

*United States v. Estrella*, 758 F.3d 1239 (11th Cir. 2014)                        23

*Hylor v. United States*, 896 F.3d 1219 (11th Cir. 2018)                           25

*Trepal v. State*, 621 So.2d 1361 (Fla. 1993)                                      25

*Nelson v. State*, 450 So.2d 1223 (Fla. 4th Dist. Ct. App. 1984)                   25

*United States v. Kim*, 307 Fed. Appx. 324 (11th Cir. 2009)                        28

*United States v. Baker*, 432 F.3d 1189 (11th Cir. 2005)                           28

# TABLE OF CITATIONS (continued)

**Cases**                                                                                                           **Page**

*United States v. Gonzalez,* 804 F.2d 691 (11th Cir. 1986)                          28

*United States v. Talley*, 108 F.3d 277 (11th Cir. 1997)                               28

*United States v. Harrell,* 635 Fed. Appx. 682 (11th Cir. 2015)              29

*United States v. Blankenship*, 382 F.3d 1110 (11th Cir. 2004)             29

*Turner v. State of Louisiana,* 379 U.S. 466 (1965)                                      31

*United States v. Dynalectric Co.*, 859 F.2d 1559 (11th Cir. 1988)       31

**Statutes and Rules**

28 U.S.C. §1291                                                                                                 8

18 U.S.C. §3231                                                                                                 8

18 U.S.C. § 1959(a)                                                                                          19

18 U.S.C. § 1959(b)(2)                                                                                     20

18 U.S.C. § 1961                                                                                              20

18 U.S.C. § 924(c)                                                                                       23-24,26

Fl. Stat. §782.04                                                                                             25

Fed. R. Crim. P. 14(a)                                                                                   27

## STATEMENT OF JURISDICTION

Under 28 U.S.C. §1291, the courts of appeal have jurisdiction from all final decisions of the district courts of the United States, except where a direct review may be had in the Supreme Court of the United States.

The United States District Court, Middle District of Florida, Tampa Division, had jurisdiction pursuant to 18 U.S.C. §3231. The District Court entered its final judgment and sentence on December 2, 2019. (Doc. 487.) Mr. Mencher filed a timely notice of appeal on December 4, 2019. (Doc. 497.) This is an appeal of the trial, judgment and sentence of the District Court.

## STATEMENT OF ADOPTION

Pursuant to Federal Rule of Appellate Procedure 28(i), Appellant Mencher adopts by reference all factual citations and non-adverse issues raised in the initial brief of co-appellant Christopher Cosimano.

## STATEMENT OF THE ISSUES

I.    Whether the District Court committed error by denying Mr. Mencher's motion for judgment of acquittal on counts one and two?

II.    Whether the District Court committed error by denying the motions for dismissal and judgment of acquittal on count three when Florida's offense of premeditated murder does not require the use of physical force?

III. Whether the District Court committed error by denying Mr. Mencher's motion for severance considering his mutually exclusive antagonistic defense and the volume of evidence admissible solely against Mr. Cosimano regarding a completely separate attempted murder?

IV. Whether or not the District Court committed error by denying Mr. Mencher's motion for mistrial when a juror tainted deliberation by conducting outside research on conspiracy law?

## STATEMENT OF THE CASE

### Course of the Proceedings and Disposition in the Court Below

Michael Mencher is currently incarcerated in the Bureau of Prisons serving the life sentence imposed by the lower court below. On May 22, a Grand Jury returned a 9-count indictment charging Michael Dominick Mencher and co-defendants Christopher Brian Cosimano, Allan Burt Giunto, Erick Richard Robinson and Cody James Wesling with Count 1: Conspiracy to Commit Murder in Aid of Racketeering Activity, Count 2: Murder in Aid of Racketeering Activity, Count 3: Use of a Firearm During and in Relation to a Crime of Violence, Count 4: Use of a Firearm During and in Relation to a Crime of Violence Causing Death, Count 5: Accessory After the Fact, Count 6: Assault with a Dangerous Weapon in Aid of Racketeering Activity, Count 7: Use of a Firearm During and in Relation to a Crime of Violence, Count 8: Accessory After the Fact and Count 9: Narcotics

Conspiracy (Doc. 1); the "Racketeering Activity" alleged in the Indictment was that the 69'ers Motorcycle Club was an Enterprise that engaged in the following:

a. Members of the Enterprise and their associates committed, attempted, and threatened to commit acts of violence, including murder, to protect and expand the Enterprise's criminal operations;

b. Members of the Enterprise and their associates promoted a climate of fear through violence and threats of violence;

c. Members of the Enterprise and their associates used and threatened to use physical violence against various individuals; and

d. Members of the Enterprise and their associates trafficked in controlled substances, including heroin, cocaine, methamphetamine, and marijuana.

The only "Racketeering Activity" the Enterprise was engaged in as charged in Count 1 of the Indictment was Trafficking in Controlled Substances. (Doc. 1, ¶5.) Christopher Brian Cosimano was charged in Counts 1, 2, 3 4, 6 and 7, Michael Dominick Mencher was charged in Counts 1, 2, 3, 4 and 9, Allan Burt Giunto was charged in Count 1, 2, 3, 4 and 8 Erick Richard Robinson was charged in Counts 1, 5 and 8, and Cody James Wesling was charged in Counts 1, 2, 3 and 4. Defendants Cosimano, Mencher and Guinto had previously been charged with Florida state crimes emanating from the conduct giving rise to the charges in the

Indictment, which state charges were dismissed after the filing of the Indictment herein.

Co-defendant Cody Wesling filed a Motion to Dismiss Indictment for failure to state an offense (Doc. 64) which Motion was adopted by Michael Mencher (Doc. 73) whose Motion to Adopt was granted by the Court. (Doc. 74.) The Government responded to the Motion to Dismiss (Doc. 77) and shortly thereafter prior to a ruling on the Motions to Dismiss the Government obtained a Superseding Indictment. (Doc. 79.) The difference between the original Indictment and the Superseding Indictment was that in Counts 1 and 2 of the Superseding Indictment the reference to Florida statute 777.011[1] was deleted, in Count 6 of the Superseding Indictment the reference to Florida Statute 784.011[2] was deleted, and added special findings of 18 U.S.C. §3591, seeking the death penalty for the murder of Paul Anderson.

Co-defendant Cody Wesling filed two Motions to Dismiss Superseding Indictment for duplicity (Docs. 78 and 84), which were denied (Doc. 88) as moot due to the filing of the Superseding Indictment, and further filed a Motion to Sever (Doc. 81); Defendant Michael Mencher also filed a Motion to Sever from all

---

[1]    777.011 refers to Florida State Statute regarding Principals.
[2]    777.011 refers to Florida State Statute regarding Simple Assault.

defendants (Doc. 85), raising *Bruton*[3] issues and *Zafiro*[4] antagonistic defenses of the co-defendants issues, to which the Government filed a written response (Doc. 97); the Court denied said Motion for Severance. (Doc. 215.) Michael Mencher renewed his Motion for Severance (Doc. 276), to which the Government responded in opposition (Doc. 287) and the Court denied Michael Mencher's Motion for Severance as moot. (Doc. 331.) Michael Mencher objected to use of statements made to an undercover confidential informant alleging a violation of protection pursuant to *Bruton*, which objection was overruled prior to trial. (Doc. 350.)

Co-defendant Wesling filed a second Motion to Dismiss the Superseding Indictment based on failure to state an offense (Doc. 103), which was adopted by Michael Mencher (Doc. 108), to which the Government responded in opposition. (Doc. 122.) Prior to the Court ruling on the Second Motion to Dismiss, the Government obtained a Second Superseding Indictment (Doc. 136) which was also denied as moot. (Doc. 137.) Co-defendant Wesling filed a Third Motion to Dismiss Duplicitous Indictment (Doc. 144) and for Failure to State an Offense (Doc. 145), which were adopted by Michael Mencher (Docs. 154, 155) which Motions to Adopt were granted by the Court (Doc. 166) and the Motions to Dismiss were denied. (Docs. 237, 239.) The Government filed Responses to the

---

3    *Bruton v. U.S.,* 391 U.S. 123 (1968)
4    *Zafiro v. U.S.,* 506 U.S. 534 (1993)

Third Motions to Dismiss (Docs. 168, 169) and a Notice that they were not seeking the death penalty as to any defendant. (Doc. 175.) Both Motions to Dismiss were subsequently denied by the Court. (Docs. 237, 239.)

Co-defendant Giunto entered a plea to counts one, two and eight of the Second Superseding Indictment pursuant to a plea agreement (Docs. 221, 228, 233), and co-defendant Wesling plead guilty to counts one and two pursuant to a plea agreement (Docs. 263, 293) and co-defendant Robinson plead guilty to counts five and nine pursuant to a plea agreement. (Docs. 265, 288.)

Michael Mencher filed a Motion in Limine seeking exclusion from trial several irrelevant and prejudicial remarks (Doc. 275) to which the Government filed a response acknowledging that the Government will not utilize at trial the remarks complained of (Doc. 303), and the Court entered an Order granting Michael Mencher's Motion in Limine. (Doc. 328.)

A nine-day jury trial was held by the Court. (Docs. 356, 358, 359, 361, 365, 367, 369, 370, 374.) During the jury deliberations the jury had a question as to the conspiracy charge: "If the intent is to beat up someone and it turns into murder, is that conspiracy to commit murder or conspiracy to commit assault? If the intent is to beat up someone and it turns into murder, is that conspiracy to commit murder or conspiracy to commit assault?" The Court answered the jury question advising

the jury that they have already heard all the instructions on the law, and the jury recessed shortly thereafter. (Doc. 540, pp.122-126.) Over the weekend break one of the jurors looked up the conspiracy laws and started discussing the issue of conspiracy with the entire jury upon the deliberations commencing, he stopped and the jury foreman sent a question to the Court that there was a concern that particular juror was tainted. (Doc. 413, p.2.) The Court interviewed each juror regarding the improper research of the law by the juror and overruled Michael Mencher's oral Motion for Mistrial. (Doc. 413, pp.40-41.) The Court replaced the juror that had researched the law over the weekend with an alternate juror and instructed the jury to start their deliberations from the beginning. (Doc. 413, pp. 45, 55.) With the alternate juror in place, the jury re-commenced deliberations and within one hour and twenty minutes they reached a verdict. (Doc. 413, p.57.)

The jury found Michael Mencher guilty of Count I: Conspiracy to Commit Murder in Aid of Racketeering Activity; Count II: Murder in Aid of Racketeering Activity; Count III: Carrying a Firearm During and in Relation to a Crime of Violence or as to the Aiding and Abetting Another who Committed that Offense; Count IV: Carrying a Firearm During and in the Course of Such Conduct causing death; and the jury found Michael Mencher not guilty of Count IX: Conspiracy to Possess with Intent to Distribute Heroin. (Doc. 382.)

At sentencing the Government dismissed Count IV: Carrying a Firearm During and in the Course of Such Conduct causing death and Michael Mencher was sentenced as to Count I: 120 months imprisonment; as to Count II: Life imprisonment concurrent with Count I; and as to Count III: 60 months consecutive to all other counts; Michael Mencher was further sentenced to a five-year term of supervised release, three years on Count I and concurrent five years on Counts II and III; based on financial circumstances all fines were waived. (Doc. 514.)

## Statement of Facts

The 69'ers motorcycle club supposedly started in the 1960's with chapters in New York, New Jersey, Pennsylvania, Connecticut, and Puerto Rico. (Doc. 535 p.125.) The club had a constitution with certain requirements including having six members to start a chapter, the requirement of filing LLC documents and tax returns. *Id.* at pp. 203-205. On top of this, a clubhouse with a surveillance system was required. (Doc. 541 p.66.) While this may have been the constitutional requirements of the 69'ers motorcycle club, the Hillsborough chapter did not follow the rules. (Doc. 535 p.121.) The Hillsborough club was started with three members and never had six. (Doc. 535 p.204.) The clubhouse was little more than a converted shed behind Mr. Cosimano and Robsinon's residence. (Doc. 535 p.125.) The clubhouse did not exist until November 2017. *Id.* at p.203. In fact, the "clubhouse" was an idea created by ATF informant Sean Leonard to assist in

surreptitious surveillance. (Doc. 539 pp.37-38.) Cooperating codefendant Alan Guinto testified that drugs would be used at parties and that they were frequently supplied by Art Suirano, a 69'ers member from Pennsylvania. (Doc. 535 pp.140-145.) Sean Leonard testified that Mr. Mencher once told him he sold small quantities of heroin for Erick Robinson. (Doc. 538 p.33:14-25.)

Members of the Hillsborough chapter were engaged in violence with local members of the Outlaws motorcycle club prior to Mr. Mencher joining. On April 18, 2017, Sean Leonard and Allan Guinto were attacked at the Local Brewing Company in Pinellas County by members of the Outlaws including Paul Anderson. (Doc. 535 pp. 154-161.) Guinto and Leonard were badly beaten and had their vests stolen. *Id.* at p.163. After this incident, Mr. Cosimano was angry and demanded retaliation by taking two Outlaw vests. *Id.* at pp. 165-166. This was not interpreted by club members as demanding the killing of Outlaws. *Id.* at p.208. Sean Leonard, who soon after the beating became a government informant after being arrested in New York, would testify that the national 69'ers boss called for two Outlaws to be put in the hospital and their vests stolen. (Doc. 538 pp. 56-57.)

On July 25, 2017, James Costa, president of the St. Petersburg Outlaws chapter, gets shot after crossing the Sunshine Skyway bridge. (Doc. 536:104-109.) Costa survived the shooting and testified at trial that he believed the shots came from a white van. (Doc. 536. 101:21-24.) A white van is seen trailing Mr. Costa at

the toll booth of the Sunshine Skyway bridge *Id.* at pp.168-171. The van is later

identified as being registered to Mr. Cosimano. *Id.* at 205:2-4. Allan Guinto

testifies at trial that Mr. Cosimano told him he shot "Jimbo." (Doc. 535 pp.176-

77.) Guinto testified Mr. Cosimano gave him his clothes and firearm and he helped

dispose of them with Cody Wesling. *Id.* at pp.177-179.

Mr. Mencher moves in with Cosimano and other 69'ers at the end of

October, 2017. (Doc. 536 pp.34-35.) Prior to this he had lived in Fort Lauderdale.

*Id.* at p. 35:19-22. Mr. Mencher is described as Mr. Cosimano's "bitch," doing

whatever Cosimano asks of him. *Id.* at p.55:12-17. Mr. Mencher was not a full

member. (Doc. 538 pp. 43-44.)

On December 21, 2017, Mr. Cosimano decides that he was going to "beat

the shit out of" Paul Anderson. (Doc. 541:26.) Mr. Cosimano informed Mencher,

Guinto, Wesling and Erick Robinson that he knew where an Outlaw was and was

going to follow him. (Doc. 535 p. 184.) Later the group ends up following Mr.

Anderson's truck. Doc. (535 p. 190.) Mencher and Cosimano are on their

motorcycles while Guinto and Robinson followed in Guinto's car and Wesling

followed in his own. *Id.* at p. 189. After following Anderson along the Suncoast

Parkway they follow him through a toll booth at state road 54. (Doc. 535 pp.191-

192.) Mr. Anderson is stopped in his truck at the light after the toll booth, and Mr.

Mencher and Mr. Cosimano allegedly ride their bikes up to the truck where Mr.

Cosimano shoots and kills Anderson. (Doc. 541 pp.41-44.)

## STANDARDS OF REVIEW

A trial court's denial of a motion for judgment of acquittal is reviewed *de*

*novo. United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). Motions to

dismiss concerning questions of law are reviewed *de novo. United States v.*

*Kapordelis*, 569 F.3d 1291, 1306 (11th Cir. 2009). The denial of a motion to sever

is reviewed for abuse of discretion. *United States v. Browne*, 505 F.3d 1229, 1268

(11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The trial court committed error by denying Mr. Mencher's motions for a

judgment of acquittal on counts one and two. The Government failed to prove that

the Hillsborough chapter of the 69'ers motorcycle club qualified as an "enterprise

engaged in racketeering activity" when individual members sold small quantities

of drugs on their own unrelated to their membership in the club and the chapter

sent token fees to the national organization. The Government also failed to show

that Mr. Mencher knew that Mr. Cosimano was going to kill Mr. Anderson, and

therefore could not have joined in a conspiracy to murder him or aid and abet the

same as a principal.

The trial court should have dismissed count three because Florida's crime of premeditated first-degree murder covers such a broad range of possible criminal activity it does not require the use of force under a categorical analysis.

The trial court should have severed Mr. Mencher's trial. A substantial portion of the trial consisted of evidence that was admissible solely against Mr. Cosimano regarding the attempted murder of James Costa. Mr. Mencher was not involved in any capacity with this criminal act, and when combined with his mutually exclusive antagonistic defense regarding the murder of Paul Anderson, substantially prejudiced Mr. Mencher's right to a fair trial.

The trial court should have granted Mr. Mencher's motion for mistrial when a juror disobeyed the trial court's order and conducted independent research into conspiracy law and proceeded to tell the entire jury about it. Such actions created a reasonable possibility of prejudicing the verdict due to the differences in law.

## ARGUMENT

## THE GOVERNMENT FAILED TO PROVE ESSENTIAL ELEMENTS OF THE OFFENSES IN COUNTS ONE AND TWO

Mr. Mencher was convicted in count one of Conspiracy to Commit Murder in Aid of Racketeering Activity 18 U.S.C. § 1959(a)(5) and count two of Murder in Aid of Racketeering 18 U.S.C. § 1959(a)(1). Doc. 514.

18 U.S.C. § 1959(a) states in relevant part

> Whoever, as consideration for the receipt of, or as consideration for a
> promise or agreement to pay, anything of pecuniary value from
> an enterprise engaged in racketeering activity, or for the purpose of
> gaining entrance to or maintaining or increasing position in
> an enterprise engaged in racketeering activity, murders, kidnaps,
> maims, assaults with a dangerous weapon, commits assault resulting
> in serious bodily injury upon, or threatens to commit a crime of
> violence against any individual in violation of the laws of any State or
> the United States, or attempts or conspires so to do…

18 U.S.C. § 1959(a).

The statute requires that the alleged criminal conduct must be tied to an

enterprise engaged in racketeering activity. Enterprise is defined as "any

partnership, corporation, association, or other legal entity, and any union or group

of individuals associated in fact although not a legal entity, which is engaged in, or

the activities of which affect, interstate or foreign commerce." 18 U.S.C. §

1959(b)(2). "Racketeering activity" is defined by reference to 18 U.S.C. § 1961:

> "racketeering activity" means (A) any act or threat involving murder,
> kidnapping, gambling, arson, robbery, bribery, extortion, dealing in
> obscene matter, or dealing in a controlled substance or listed chemical
> (as defined in section 102 of the Controlled Substances Act), which is
> chargeable under State law and punishable by imprisonment for more
> than one year

18 U.S.C. § 1961.

Under these statutory definitions, the Government did not meet its burden of

proving beyond a reasonable doubt that the 69'ers motorcycle club was an

"enterprise engaged in racketeering activity" under Federal law. Furthermore, the

evidence was insufficient to prove that Mr. Mencher allegedly committed these

offenses for purposes of receiving consideration from such an enterprise or maintaining or increasing his standing in such an enterprise.

By definition, the Hillsborough chapter of the 69'ers motorcycle club is not an enterprise; its actions do not affect interstate commerce. An entity acts "in commerce" if it "uses the channels or instrumentalities of interstate commerce to facilitate their commission. *United States v. Batson,* 818 F.3d 651, 664 (11th Cir. 2016). The Hillsborough chapter was littler more than a few guys partying in the back shed of one of the members. Some of the members allegedly participated in drug dealing (Mencher himself was acquitted of trafficking). Some members allegedly attended meetings in other states and supposedly paid dues to the national organization who sent patches to them. The Government did not produce evidence that the drug dealing was tied to the organizational goals of the 69'ers club. The Hillsborough 69'ers were a motorcycle club, not a drug trafficking organization. Some of its members, Siurano and Diaz were not members of the Hillsborough club. There was no evidence that the drug activities of Erick Robinson or Cody Wesling were directly tied to membership in the 69'ers or status in the club. Furthermore, there was no evidence that the drug transactions were done for anything of value. Furthermore, the dues paid to the national organization, fifty dollars, are of such nominal value that they could not reasonably have even a

slight impact on interstate commerce. *United States v. Beasley*, 72 F.3d 1518, 1526 (11th Cir. 1996).

The Government also failed to prove beyond a reasonable doubt that the Hillsborough chapter of the 69'ers motorcycle club was involved in acts of racketeering. The 69'ers were not a drug trafficking organization; they were a motorcycle club. While individual members may have engaged in drug dealing, there was no evidence that their activities were tied to their membership in the club. The 69'ers motorcycle club may have been comprised of members who engaged in criminal activities, but there was no evidence that the crimes they committed, sales of drugs or getting in fights, rose to the level of racketeering activity or were committed for the purpose of gaining entry to the club or improving their status in the club. As such, the Government failed to prove that Mr. Mencher, who was acquitted of charges of drug activity, was part of an enterprise engaged in racketeering activity.

Furthermore, the evidence was insufficient to prove that Mr. Mencher committed or conspired to commit first degree murder. The substantive evidence used against Mr. Mencher comprised of conflicting and contradictory testimony of cooperating witnesses. Codefendant Wesling even admitted to lying to law enforcement and withholding information while trying to get cooperation credit. There was no evidence produced at trial that Cosimano or Mencher intended to kill

Mr. Anderson. In fact, Wesling even said that Cosimano said he was going to "beat the shit out of" Anderson. Doc. 541:26 The evidence did not show beyond a reasonable doubt that there was an agreed upon plan to kill Anderson and that Mr. Mencher joined in it. Because he did not know that Mr. Cosimano would shoot Mr. Anderson, he did not have the intention of encouraging or abetting his murder and cannot be liable as a principal. *See Rosemond v. United States*, 572 U.S. 65, 71 (2014) (those who provide knowing aid to persons committing federal crimes with the intent to facilitate them are guilty).

Because the Government did not prove beyond a reasonable doubt that the Hillsborough chapter of the 69'ers motorcycle club were an "enterprise engaged in racketeering activity" and did not prove beyond a reasonable doubt that Mr. Mencher joined a conspiracy to commit murder or was an accomplice to it, This Court should reverse the convictions for counts one and two.

## THE DISTRICT COURT ERRED IN NOT DISMISSING OR GRANTING ACQUITTAL ON COUNT THREE AS FLORIDA'S PREMEDITATED MURDER DOES NOT QUALIFY AS A CRIME OF VIOLENCE UNDER 18 U.S.C. §924(C)

Codefendant Wesling filed a motion to dismiss count three. Doc. 145. Mr. Mencher's trial counsel adopted this motion. Doc. 154. The motion argued that Florida's premeditated murder statute doesn't qualify as a crime of violence under 18 U.S.C. §924(C). That statute defines a "crime of violence" as felony that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The first part of this statute is referred to as the "use of force" clause and the second is referred to as the "residual" clause. *In re Fleur*, 824 F.3d 1337, 1339 (11th Cir. 2016). The U.S. Supreme Court has held that the residual clause is unconstitutional. *See United States v. Davis*, 139 S.Ct. 2319 (2019). Leaving only the elements clause, courts must employ a "categorical" approach to determine whether or not an offense qualifies. *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019). This requires looking "to whether the statutory elements of the predicate offense necessarily require, at a minimum, the threatened or attempted use of force." *Id.* The court, therefore, must consider the least culpable conduct punished under the statute and determine if that requires the proof of the use, attempted use, or threatened use of physical force against the person of another. *Curtis Johnson v. United States*, 559 U.S. 133, 137 (2010). The categorical approach thereby "requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against

a person for every charge under the statute." *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014).

This Court summarized the state of caselaw defining physical force:

> To qualify under the elements clause, a state offense must require the defendant to commit, to attempt, or to threaten physical acts that are directly or indirectly "capable of causing physical pain or injury." The offense must involve force that is "physical," meaning that it must be "exerted by and through concrete bodies." The force must be "violent," meaning that the force must be "capable of causing physical pain or injury to another." And the "use" of force requires "the knowing or intentional application of force."

*Hylor v. United States*, 896 F.3d 1219, 1222 (11th Cir. 2018). (internal citations omitted.)

Florida defines premeditated first-degree murder as "The unlawful killing of a human being . . . [w]hen perpetrated from a premeditated design to effect the death of the person killed." Fl. Stat. §782.04. This statute is broad and allows for the offense to be committed without the use of physical force. Courts have sustained convictions for attempted first degree premeditated murder where the defendant surreptitiously poisoned the victim, but the victim did not die. *See Trepal v. State*, 621 So.2d 1361, 1362-63 (Fla. 1993) (defendant hid the poison in bottles of Coca-Cola and secreted the bottles in the victim's house); *Nelson v. State*, 450 So.2d 1223, 1224-25 (Fla. 4th Dist. Ct. App. 1984) (defendant hid poison in pills and furnished pills to victims).

The Fifth Circuit has concluded that offenses that can be violated by poisoning another do not involve the use, attempted use, or threatened use of physical force. *See United States v. Garcia-Perez*, 779 F.3d 278, 283-84 (5th Cir. 2015) (Florida manslaughter); That court reasoned that because poisoning is an act that can be committed without the use of violent force, an offense that can be violated by poisoning does not satisfy the definition of "physical force" required by those provisions. *Id.* at 284.

Due to the broad conduct covered by Florida's premeditated murder statute, it doesn't take much imagination to conceive of a situation where one can kill someone through premeditation without the use of force as defined by This Court. As such from a categorical approach, Florida's offense of premeditated first-degree murder must fail as a qualifying offense under 18 U.S.C. §924(C). The trial court therefore committed error by denying the motion to dismiss and subsequent motion for acquittal and This Court should vacate the judgment and sentence for count three.

## THE DISTRICT COURT ERRED IN DENYING MR. MENCHER'S MOTION FOR SEVERANCE FROM HIS CO-DEFENDANT

Mr. Mencher was only charged in five counts of the nine-count  superseding indictment returned on July 31, 2018. Doc. 79. He was charged with co-defendant Cosimano in counts one through four. *Id.* Mr. Cosimano is charged separate with offenses stemming from the shooting of James Costa. *Id.* Mr. Mencher moved to

sever his trial from his codefendants citing concerns about *Bruton* issues and antagonistic defenses and the incompleteness of discovery. Doc. 85. The Court denied the motion. Doc. 215. Severance was raised again in a renewed motion. Doc. 276. In the renewed motion, Mr. Mencher's trial counsel argued that Mr. Mencher and Mr. Cosimano had antagonistic defenses, each arguing the other was the shooter. *Id.* at p. 6. Furthermore, trial counsel raised concerns about jury confusion regarding the James Costa shooting that Mr. Mencher was not charged with. *Id.* During a hearing the trial court indicated it was inclined to deny the motion *Doc. 544* p.18:4-5. At a July 9 pretrial conference, the trial court ruled the motion as moot as the parties would agree upon excluding *Bruton* statements prior to trial. *See Doc.* 545.

At trial, Mr. Cosimano and Mr. Mencher put on mutually exclusive antagonistic defenses. Significant evidence implicating Mr. Cosimano in the James Costa shooting was presented which would have been irrelevant and inadmissible in a separate trial of Mr. Mencher.

Rule 14 of the Federal Rule of Criminal Procedure states in relevant part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

Joinder and severance rules "are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be

achieved without substantial prejudice to the right of the defendants to a fair trial.'"

*Zafiro v. United States*, 506 U.S. 534, 540, (1993) *quoting Bruton v. United States*, 391 U.S. 123, (1968) . "When ruling on a severance motion, a district court should 'balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice.'" *United States v. Kim*, 307 Fed. Appx. 324, 327 (11th Cir. 2009) *quoting United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005). The district court should grant the motion to sever "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Severance in this matter was required due to both mutually exclusive antagonistic defenses and the admissibility of inculpatory evidence against Mr. Cosimano that was not admissible against Mr. Mencher.

Mutually exclusive antagonistic defenses arise whenever the jury, in order to believe one defendant's defense, must necessarily disbelieve the defense of another defendant. *United States v. Gonzalez,* 804 F.2d 691, 695 (11th Cir. 1986). Mutually exclusive antagonistic defenses are not per se prejudicial after *Zafiro. United States v. Talley*, 108 F.3d 277 (11th Cir. 1997). The *Zafiro* court left severance to the discretion of the District Court. *506 U.S. at 538-39.* But that does not preclude severance if there is "a serious risk that a joint trial would compromise a specific

trial right of one of the defendants," or (2) a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

While "the mere fact that there might be an 'enormous disparity in the evidence admissible against [one defendant] compared to the other defendants is not a sufficient basis for reversal,'" [...] "[s]everance is mandated by the district court where compelling evidence not admissible against one or more codefendants will be introduced against another codefendant." *United States v. Harrell*, 635 Fed. Appx. 682, 687 (11th Cir. 2015) *quoting United States v. Blankenship*, 382 F. 3d 1110, 1123 (11th Cir. 2004).

Mr. Cosimano's counsel argued to the jury that Mr. Mencher shot Paul Anderson. Doc.406 P.53:12-16. Mr. Mencher's trial counsel "literally and figuratively 'pointed the finger' at Mr. Cosimano on every opportunity she could. Most critically, she spent a substantial portion of her closing argument doing so." Brief of Co-Appellant Cosimano p.60. Furthermore, significant evidence was produced at trial about the James Costa shooting. Mr. Costa testified that shots fired at him emanated from a white van. Doc. 536. 101:21-24. William Grimm testified and presented evidence of a white van following Mr. Costa through a toll plaza on the night of the Costa shooting. *Id.* at pp.168-171. The van was identified as being registered to Mr. Cosimano by Detective Miller based on Mr. Grimm's evidence. *Id.* at 205:2-4. Cooperating witnesses Cody Wesling, Alan Guinto, Arthur Siurano and

Sean Leonard all testified about their actions surrounding the Costa shooting. Mr. Mencher had nothing to do with the Costa shooting; he didn't become a probationary member until at the earliest October 2017 when he was unarmed and present during a "show of force" at Quaker Steak and Lube. *Id.* at pp.241-245.

Without Cosimano at the trial, evidence surrounding the Costa shooting would not have been introduced. Mencher did have a relationship with Mr. Cosimano through the motorcycle club, but presenting Mr. Cosimano's violent history, the call for retaliation against the Outlaws, and the evidence that Mr. Cosimano's van was mere seconds behind Mr. Costa on the night of his shooting created overwhelming evidence of guilt against Cosimano regarding Mr. Costa that's inadmissible against Mr. Mencher. This prejudice combined with the mutually exclusive antagonistic defenses rendered the trial court's curative efforts futile. This Court should reverse the judgment and sentence and remand this case back for a new trial, finding that Mr. Mencher was irreparably prejudiced by being tried jointly with Mr. Cosimano in this case.

## THE DISTRICT COURT ERRED IN DENYING THE MOTION FOR MISTRIAL WHEN THE SEATED JUROR CONDUCTED HIS OWN RESEARCH INTO CASELAW RELEVANT TO THE TRIAL AND ADVISED THE OTHER JURORS ON WHAT THEY FOUND

During deliberations, one of the jurors conducted his own independent legal research and told the other jurors about what he researched. See Doc. 413 (sealed)

Juror Jarupan admitted to the trial court that he looked up the law and spoke to the

juror meeting room. *Id.* at 3:1-11. Juror Jarupan, number three, was removed from

the panel and referred to the U.S. Attorney's Office for possible contempt

proceedings. *Id.* at 39:10-12. Mr. Mencher's trial counsel moved for a mistrial due

to juror misconduct. *Id.* at 40:2-12. The Court denied the motion and called for two

of the alternate jurors to come back to the court. *Id.* at pp.41-43. Jurors 13 and 14

were called in. Juror Vescera originally didn't want to serve after being sworn in.

Doc. 535 pp. 50-53. He also didn't want to come back despite being called by the

Court. Doc. 413 (sealed) p.47:18-20. Juror Stevenson was recalled to the court and

after both were examined, Juror Vescera was seated in place of Juror Jarupan. *Id.*

at pp 52-53. A guilty verdict was reached one hour and twenty minutes later. *Id.* at

pp. 56-57.

    The sixth amendment guarantee of a trial by jury requires the jury verdict to

be based on the evidence produced at trial. *Turner v. State of Louisiana,* 379 U.S.

466, 472 (1965). This requirement "goes to the fundamental integrity of all that is

embraced in the constitutional concept of trial by jury." *Turner,* 379 U.S. at

472. A jury verdict cannot stand if there is a reasonable possibility that the verdict

was prejudiced by the introduction of improper extrinsic evidence. *United States v.*

*Dynalectric Co.,* 859 F.2d 1559, 1582 (11th Cir. 1988).

In this case, Juror Jarupan conducted independent research into the law on conspiracy to murder and general conspiracy *Id.* at pp 5-6. He then said he "tell the other juror that conspiracy for murder has the different number. So the confidition of that thing is different from the conspiracy that we – in the general conspiracy in the book." *Id.* at p. 6:11-14. Jarupan was replaced by a juror who initially expressed a desire not to serve after being sworn in, and then was reluctant to return to Court after being dismissed. Jarupan influenced his fellow jurors by introducing law outside of the Court's instructions. Jarupan also has evident difficulties communicating in English as evidenced by the transcripts. His attempts to inform the jury about the differences between Conspiracy and Conspiracy to Commit Murder in Aid of Racketeering, made in incomplete English by a lay person untrained in the law, created a reasonable possibility that the jurors felt it easier to convict Mr. Mencher. This Court should remand the case for a new trial as the motion for mistrial should have been granted.

## CONCLUSION

Based on the foregoing, Appellant Michael Mencher respectfully requests that This Court enter an order vacating the judgment and sentence on counts one through three and ordering his discharge on those counts, or in the alternative order a new trial severed from Christopher Cosimano.

Respectfully Submitted,

Darlene Calzon Barror
Law Office of Darlene Calzon Barror, P.A.
506 N. Armenia Ave.
Tampa, FL 33609
(813) 877 6970
(813) 879 2610 (fax)
Pleadings@barrorlaw.com
Counsel for Appellant Michael Mencher

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The undersigned certifies, pursuant to 11th Circuit Rule 28-1, that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure because it contains 6,938 words, excluding the parts exempted by subsection 32(a)(7)(B)(iii). Microsoft Word software was used to count the words in the foregoing brief. This brief, likewise, complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman font.

Darlene Calzon Barror
Law Office of Darlene Calzon Barror, P.A.
506 N. Armenia Ave.
Tampa, FL 33609
(813) 877 6970
(813) 879 2610 (fax)
Pleadings@barrorlaw.com
Counsel for Appellant Michael Mencher

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, on September 17, 2021.

Darlene Calzon Barror
Law Office of Darlene Calzon Barror, P.A.
506 N. Armenia Ave.
Tampa, FL 33609
(813) 877 6970
(813) 879 2610 (fax)
Pleadings@barrorlaw.com
Counsel for Appellant Michael Mencher

I FURTHER CERTIFY that seven hard copies of the foregoing brief are being furnished to the Clerk of this Court and the Appellant by mail.

Darlene Calzon Barror
Law Office of Darlene Calzon Barror, P.A.
506 N. Armenia Ave.
Tampa, FL 33609
(813) 877 6970
(813) 879 2610 (fax)
Pleadings@barrorlaw.com
Counsel for Appellant Michael Mencher